<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SANIA MAHMOOD,** | : | Civil Action No.: 09-2656 (DEA) |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| **JOSEPH NARCISO, et al.,** | : | |
| Defendants. | : | |
| _____ | : | |

<u>**ARPERT, U.S.M.J.**</u>

**I.   INTRODUCTION**

On May 11, 2009, Plaintiff Sania Mahmood ("Plaintiff") filed a Complaint in the Superior Court of New Jersey in which she alleges that she was injured on June 12, 2007 when a tractor trailer owned by Defendants Mayflower Transit, LLC ("Mayflower") and Vantage Blue ("Vantage") and operated by Defendant Joseph Narciso ("Narciso") (collectively, "Defendants") collided with her vehicle. *See* Pl.'s Compl., dkt. entry no. 1-1 at 1-3. Defendants removed this matter to United States District Court on June 2, 2009. *See* dkt. entry no. 1. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, on September 16, 2011 the parties consented to the jurisdiction of United States Magistrate Judge Douglas E. Arpert to conduct all proceedings and enter final judgment in this matter. *See* dkt. entry nos. 32-33.

This matter now comes before the Court on a series of motions *in limine.* Specifically, on October 28, 2011 Defendants filed motions *in limine* (1) to preclude Plaintiff's expert Cary Skolnick, M.D. ("Dr. Skolnick") (*see* dkt. entry no. 38), (2) to preclude Plaintiff's expert Edward H. Tobe, D.O. ("Dr. Tobe") (*see* dkt. entry no. 37), (3) to preclude Plaintiff's expert Paul M.

Gazaleh ("Mr. Gazaleh") (*see* dkt. entry no. 35), (4) to preclude Plaintiff's expert Mona G. Yudkoff, R.N. ("Ms. Yudkoff") (*see* dkt. entry no. 36), and (5) to preclude evidence and/or testimony regarding Plaintiff's alleged out of pocket expenses (*see* dkt. entry no. 40). Plaintiff Sania Mahmood ("Plaintiff") filed opposition to Defendants' motions *in limine* on November 21, 2011 and November 23, 2011 (*see* dkt. entry nos. 51-54, 56).

On November 4, 2011, Plaintiff filed one (1) motion *in limine* to preclude or limit the testimony of Defendants' experts Eric Fremed, M.D. ("Dr. Fremed") and David Masur, M.D. ("Dr. Masur") (*see* dkt. entry no. 41). Defendants filed opposition to Plaintiff's motion *in limine* on November 23, 2011 (*see* dkt. entry no. 55).

The Court conducted oral argument on these motions *in limine* on February 10, 2012. For the reasons stated on the record and herein, the motions *in limine* are **GRANTED** and **DENIED** as set forth below.

## II.   LEGAL STANDARDS

Pursuant to FED. R. EVID. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

In 2000, the Supreme Court provided guidance to the federal district courts applying FED. R. EVID. 702. The Court stated that "district courts serve as the gatekeepers and must determine the reliability of the proffered testimony." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

U.S. 579, 589 (2000). The objective of the district court's gatekeeping role "is to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In *Daubert*, the Supreme Court set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. 509 U.S. 579. These factors include (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 590-92; *see also Simmons v. Ford Motor Co.*, 132 Fed. Appx. 950, 952 (3d Cir. 2005). At a minimum, "[a]n expert opinion is reliable when it is based on sound methodology and 'good grounds'." *Kumho*, 526 U.S. 137; *D & D Associates v. Bd. of Educ. of N. Plainfield*, 411 F. Supp. 2d 483 (D.N.J. 2006).

In *Kumho*, the Supreme Court addressed the applicability of the *Daubert* standards beyond "scientific" expert testimony. The Court stated that in non-scientific cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150. The Court further stated that "the relevant reliability concerns may focus upon personal knowledge or

3

experience." *Id.*, *see also United States v. Ford*, 481 F.3d 215, 219 (3d Cir. 2007) (the Third Circuit reiterated that reliability may turn on the proposed expert's "personal knowledge or experience"). Moreover, an expert may be allowed to testify about an area in which he does not have extensive training; specifically, when the expert has experience employing the same principles at issue, he is entitled to a "liberal standard" under Federal Rule of Evidence 702. *See Tormenia v. First Investors Realty Co., Inc.*, 251 F.3d 128 (3d Cir. 2000).

In addition to offering reliable expert testimony, the trial court must also determine whether the expert has adequate "specialized knowledge" such that he is qualified to testify as an expert. The basis of "specialized knowledge" can be from "practical experience as well as academic training and credentials." *Kane Builders, Inc. v. Southern New Jersey Building Laborers Dist. Council*, 2007 WL 2416470, at *6 (D.N.J. 2007) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has interpreted the "specialized knowledge" requirement liberally, finding that "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

"The permissible scope of expert testimony is quite broad, and district courts are vested broad discretion in making admissibility determinations." *Hill v. Reederei F. Laeisz G.M.B.H. Rostock*, 435 F.3d 404, 423 (3d Cir. 2006). It is important to note that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152. With that said, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, *2000 Amendments*. "*Daubert* did not work as a 'seachange over federal evidence law', and 'the trial court's role as

4

gatekeeper is not intended to serve as a replacement for the adversary system'." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1995). Put another way, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

The standard of review for a district court's decision to admit or exclude scientific evidence is abuse of discretion. *General Electric v. Joiner*, 522 U.S. 136, 146 (1997). A district court specifically abuses its discretion when "it excludes testimony simply because [the court] does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers the most appropriate." *Lauria v. Natl. R.R. Passenger Corp.*, 145 F.3d 593, 598-99 (3d Cir. 1998) (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (citing *In re Paoli*, 916 F.2d 829, 856)).

The Court notes that pursuant to FED. R. EVID. 703,

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular filed would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

### III. DEFENDANTS' MOTIONS

#### (A) Defendants' motion to preclude Plaintiff's expert Dr. Skolnick [dkt. entry no. 38]

Dr. Skolnick is an orthopedist. Plaintiff timely identified Dr. Skolnick as an expert and

5

he rendered three (3) reports in which he records, among other things, a diagnosis of TMJ syndrome for which he recommends trigger point injections and physical therapy. He also concludes that Plaintiff can only perform sedentary work. Lastly, Dr. Skolnick notes that Plaintiff has been "indicated" for cervical spine anterior cervical fusion.

Defendants contend that Dr. Skolnick's opinions with respect to these issues do not meet the requirements of FED. R. EVID. 702 and 703. Specifically, Defendants argue that a diagnosis of TMJ syndrome is outside the scope of Dr. Skolnick's expertise; that Dr. Skolnick provides no basis for his conclusion that Plaintiff can only perform sedentary work in violation of FED. R. CIV. P. 26(a)(2)(b)(i) and without reference to any Functional Capacity Evaluation ("FCE"), independent examination findings, objective testing, or any specific physical limitations; and that Dr. Skolnick relies on Dr. Lowe's medical records to conclude that cervical fusion is indicated while Dr. Lowe's records do not recommend such surgery and Dr. Skolnick does not indicate any independent findings on this subject.

Oppositely, Plaintiff contends that Dr. Skolnick is a licensed medical doctor in the State of New Jersey with a board certification in orthopedic surgery. He examined Plaintiff personally on one (1) occasion and reviewed extensive medical records, treatment history, and opinions of other professionals. Accordingly, Plaintiff argues Dr. Skolnick is qualified to diagnose TMJ syndrome and recommend treatment; he is entitled to rely on prior opinions and records, and his own findings with respect to his cervical fusion recommendation; and that he in fact did rely upon the medical opinions and records of Plaintiff's treating doctors with respect to her limited functional capacity. Plaintiff cites FED. R. EVID. 702 and 703 and *Calimano v. Brzychey*, 2010 WL 3517028 (N.J. 2010), maintaining that it is appropriate for Dr. Skolnick to rely upon

opinions and findings of other medical doctors in diagnosing TMJ syndrome and recommending additional treatment.  Plaintiff notes that Dr. Skolnick relied upon the report of Dr. Lowe, an orthopedic surgeon who made similar findings with respect to the cervical fusion.  Plaintiff notes that Dr. Skolnick also relied upon Dr. McEliece's report and Dr. Weiss' report with respect to Plaintiff's limitation to sedentary employment.  Finally, Dr. Skolnick personally reviewed Plaintiff's MRI film and agreed with the conclusions reached by the doctors mentioned above based upon his own physical findings and review of medical records, and the diagnoses of other physicians.

Upon review, the Court concludes that while Dr. Skolnick may possess the basic qualifications necessary to render an opinion concerning orthopedic injuries, in the absence of any examination or findings related to this alleged injury, his report lacks the requisite detail and analysis to support his conclusions with respect to a TMJ injury or related treatment.  Accordingly, Defendants' motion to preclude Dr. Skolnick's testimony regarding Plaintiff's alleged TMJ injury [dkt. entry no. 38] is **GRANTED**.

Likewise, with respect to his opinion that Plaintiff is only able to perform sedentary work, Dr. Skolnick's report provides no explanation or support for this conclusion.  Dr. Skolnick fails to reference any prior testing, medical records or reports, and contains no independent findings, which underlie his statements concerning Plaintiff's functional capacity.  Accordingly, Defendants' motion to preclude this aspect of Dr. Skolnick's testimony [dkt. entry no. 38] is **GRANTED**.

Finally, Dr. Skolnick's observation that cervical fusion surgery is "indicated" does not have adequate support.  While such an opinion may be within his area of expertise, there are

insufficient references in the Plaintiff's medical records and reports of other physicians to support this opinion. Specifically, Dr. Lowe's report (upon which Dr. Skolnick's conclusion is premised) does not recommend such surgery. It is also noteworthy that Dr. Lowe is expected to testify at trial and can offer his own opinion on this subject. Accordingly, Defendants' motion to preclude this aspect of Dr. Skolnick's testimony [dkt. entry no. 38] is **GRANTED**.

        **(B)**     **Defendants' motion to preclude Plaintiff's expert Dr. Tobe [dkt. entry no. 37]**

Plaintiff timely identified Dr. Tobe as a psychiatric expert. He rendered a report dated February 28, 2011. Dr. Tobe, who is not Plaintiff's treating psychiatrist, has diagnosed Plaintiff with post-traumatic stress disorder, mood disorder, and cognitive disorder and encourages ongoing psychiatric treatment. Defendants argue that Dr. Tobe saw Plaintiff just once and was retained solely to write a report for this litigation, that he did not conduct his own neuropsychological evaluation of Plaintiff, and that he relied on an evaluation of Plaintiff that was completed more than three (3) years before his evaluation. His report indicates that he did not know if there was more recent neuropsychological testing and opined same would be beneficial. Further, he did not review any recent records from Plaintiff's treating psychiatrist Dr. Amin. For these reasons, Defendants contend that Dr. Tobe's opinions are unsupported and speculative.

Defendants cite FED. R. EVID. 702 and 703 and *Daubert*, arguing that Dr. Tobe's opinions regarding Plaintiff's diagnosis and further treatment are not sufficiently supported and are speculative, net opinions. Specifically, Dr. Tobe does not set forth any basis for his recommendation of continued psychiatric treatment nor any basis for why he attributes same to the 2007 accident. In sum, Defendants contend that Dr. Tobe's opinions are unsupported.

Oppositely, Plaintiff contends that Dr. Tobe reviewed medical records and conducted his own evaluation of Plaintiff in order to arrive at his conclusions. Based on these materials and findings, he concluded that Plaintiff suffers from post-traumatic stress disorder, a mood disorder, and a cognitive disorder as a result of the 2007 accident. Finally, Plaintiff cites FED. R. EVID. 702 arguing that there is nothing improper about a report prepared solely for litigation.

Defendants do not argue that Dr. Tobe does not possess the necessary qualifications to render an expert, psychiatric opinion. Upon review of Dr. Tobe's report, it appears his report and opinions are based on his examination of Plaintiff and her medical records including those of her treating psychiatrist, Dr. Amin. As such, the Court cannot conclude, as suggested by Defendants, that Dr. Tobe's opinions are based on conjecture and speculation, and lacking in any basis to support his conclusions. Accordingly, Defendants' motion to preclude Dr. Tobe [dkt. entry no. 37] is **DENIED**.

### (C) Defendants' motion to preclude Plaintiff's expert Mr. Gazaleh [dkt. entry no. 35]

Plaintiff timely identified Paul M. Gazaleh as an economic expert and he served a report dated August 19, 2010. In his report, Mr. Gazaleh concludes that Plaintiff has sustained economic damages totaling $453,065.00. His conclusions are based on a work-life expectancy of 24.34 years, a total disability as of June 12, 2007, and include $19,949.00 in past lost income. Defendants contend that Mr. Gazaleh assumed Plaintiff's total inability to work based on the conclusion set forth in Dr. Skolnick's report. Accordingly, Mr. Gazaleh's testimony should be limited in a fashion similar to Dr. Skolnick's testimony. Defendants also contend that Mr. Gazaleh's report relies on certain inaccurate information. Specifically, Defendants claim Mr.

Gazaleh fails to address Plaintiff's increased post-accident earnings, and does not address that portion of Plaintiff's 2007 wage loss which occurred prior to the June 12, 2007 accident. Finally, Mr. Gazaleh failed to review Plaintiff's 2005 and 2006 tax returns. For these reasons, Defendants contend that Mr. Gazaleh's opinions are unsupported by evidence and fail to meet the standard required for expert testimony.

Oppositely, Plaintiff contends that both Dr. Skolnick's report and Mr. Gazaleh's report with respect to Plaintiff's inability to work are admissible. Citing FED. R. EVID. 702, Plaintiff argues that the law allows an expert to consider opinions and evidence not admissible in evidence; that it is acceptable for Mr. Gazaleh to rely on the opinions of Dr. Skolnick and the jury can give substantial or little weight to any questionable evidence.

Upon review of Mr. Gazaleh's report, although his methodology, findings and conclusions are appropriately subject to scrutiny on cross examination, the Court cannot conclude that they are so deficient as to merit preclusion. Accordingly, Defendants' motion to preclude Mr. Gazaleh [dkt. entry no. 35] is **DENIED**.

**(D)** **Defendant's motion to preclude Plaintiff's expert Ms. Yudkoff [dkt. entry no. 36]**

Plaintiff timely identified Mona G. Yudkoff, R.N. as an expert and served her report dated March 17, 2011. Based on the life care plan prepared by Ms. Yudkoff, she is expected to testify as to the future medical care required by Plaintiff and the costs associated with that care. Defendants claim that she based her opinions solely on the conclusions of Drs. Skolnick and Tobe with respect to the necessity for future spinal surgery, additional TMJ treatment, medical equipment and medication, as well as future psychiatric treatment. Defendants contend that Ms.

Yudkoff's testimony must be limited in a fashion similar to Drs. Skolnick and Tobe and that the Court should preclude Ms. Yudkoff from offering evidence of any need for future treatment or the costs associated with TMJ syndrome, spinal surgery, and any psychiatric treatment. Defendants contend that anything not listed as "required" by Dr. Skolnick should be precluded, including the annual cost of medication and equipment and a shower seat and assistive devices for activities of daily living given that they were not noted as "required" by Dr. Skolnick or any treating physician. Finally, Ms. Yudkoff questions Plaintiff's ability to carry a pregnancy to term and calculates the future costs of surrogacy, live-in assistance and child care. Defendants maintain that this is beyond her expertise, baseless, speculative and prejudicial, and that all such costs must be reduced from Ms. Yudkoff's overall life care plan.

Oppositely, Plaintiff notes that Dr. Skolnick opined that Plaintiff would require certain ongoing medical care including spinal surgery as well as continued injections for her left shoulder and knees and he set out the costs associated with such care. Likewise, Dr. Tobe opined that Plaintiff would need continued psychiatric treatment and he set out the costs of same. Plaintiff contends that Ms. Yudkoff's conclusions are based upon her examination of Plaintiff and review of the records and opinions of other professionals. Citing FED. R. EVID. 403, 702 and 703 and *Daubert*, Plaintiff argues that Ms. Yudkoff based her conclusions on the specific sources which she listed.

Having considered the elements of Ms. Yudkoff's report, it is clear that her conclusions about pregnancy are based on Plaintiff's subjective belief that she cannot endure a pregnancy or childbirth due to her physical and emotional condition. However, there is no other support for this conclusion and this aspect of her report. Accordingly, Defendants' motion to preclude this

aspect of Ms. Yudkoff's testimony [dkt. entry no. 36] is **GRANTED**. Likewise, as it relates to her discussion and opinions concerning the future cost of treatment with respect to TMJ syndrome, Defendants' motion is **GRANTED**. The balance of Defendants' motion is **DENIED**.

### (E) Defendants' motion to preclude evidence and/or testimony regarding Plaintiff's alleged out-of-pocket expenses [dkt. entry no. 40]

Plaintiff's amended discovery responses claim out-of-pocket expenses totaling $86,968.66. Specifically, $81,171.00 constitutes outstanding medical bills which were either denied by Plaintiff's PIP carrier or were submitted after PIP benefits were exhausted and $5,797.00 was allegedly paid "out of pocket" by Plaintiff. Defendants contend that Plaintiff has failed to appropriately document such expenses. According to Defendants, the bills provided to date do not confirm that any monies were actually paid by, or are due and owing from, Plaintiff. In sum, Defendants contend that because no documentation has been provided to substantiate any actual out-of-pocket expenses, evidence of same should be precluded at trial.

In response, Plaintiff contends that Defendants have admitted that out-of-pocket expenses exist. Specifically, Plaintiff argues that Defendants have conceded that she has presented evidence of out-of-pocket expenses totaling $5,797.00. Further, Plaintiff argues that Defendants have conceded that medical expenses totaling $81,171.00 were denied by Plaintiff's PIP carrier or were submitted after her PIP benefits were exhausted. Plaintiff maintains that Defendants' concessions demonstrate that Plaintiff has provided sufficient information of her economic losses to satisfy Rule 26.

Plaintiff also notes that Defendants were involved in a companion matter with Selective Insurance Company of America ("Selective") (Civil Action No. 09-5009 (D.N.J. 2009)) for

subrogation/reimbursement and were privy to the medical expenses paid, expenses incurred, and bills not covered by the Selective policy through discovery in that action. Plaintiff also notes that the subrogation matter has settled and presumably Defendants will reimburse Selective some portion of the expenses it demanded. Assuming this is the case, Plaintiff maintains that she will have additional funds available to pay outstanding medical bills such that this issue may be moot.

At the conclusion of oral argument, the Court directed counsel to meet and confer concerning this issue. No further communication has been received from the Parties on this issue. Accordingly, Defendants' motion to preclude evidence and/or testimony regarding Plaintiff's alleged out-of-pocket expenses [dkt. entry no. 40] is **DENIED** without prejudice.

IV.   **PLAINTIFF'S MOTION**

    **(F)**     <u>**Plaintiff's motion to preclude or limit the testimony of Defendants' experts Drs. Fremed and Masur [dkt. entry no. 41]**</u>

Defendants timely identified Dr. Eric Fremed and Dr. David Masur as medical experts. With respect to Dr. Masur, Plaintiff has moved to bar him from testifying at trial because she claims he has not served a report. However, defense counsel has clarified and Plaintiff has acknowledged that after some confusion, following the completion of his examination of Plaintiff on August 22, 2011, a final written report was served on November 9, 2011. Accordingly, Plaintiff's motion to preclude or limit the testimony of Dr. Masur [dkt. entry no. 41] is **DENIED**.

With respect to Dr. Fremed, the Court notes that he has rendered three (3) written reports. Plaintiff's motion is directed to the contents of Dr. Femed's initial report of February 17, 2012. Initially, Plaintiff seeks to exclude any reference by Dr. Fremed to an accident in which Plaintiff

13

was injured, in Pakistan, in 2002.  Plaintiff argues that "any allusions to the automobile accident in Pakistan by Dr. Fremed should be excluded as irrelevant and nothing more than a cheap shot at Plaintiff's ethnicity".  *See* Pl.'s Br., dkt. entry no. 41 at 2.  In addition, Plaintiff argues that Dr. Fremed's report contains numerous references to reports of "non-treating physicians who rendered expert opinions in PIP cases and/or civil suits resulting from automobile accidents, which occurred on December 26, 2006 and/or the subject accident, June 12, 2007".  *Id*.  While Plaintiff acknowledges that a dispute exists as to which of her injuries are related to which accident, Plaintiff argues that this dispute "does not allow Dr. Fremed to backdoor in the opinions of non-treating medical personnel who will not be called to testify in this case".  *Id*. at 3.  Plaintiff identifies ten (10) such references in Dr. Fremed's report..

In opposition, Defendants deny any inappropriate motive for Dr. Fremed's reference to the 2002 accident in Pakistan.  Further, Defendants note that the Parties' proposed Final Pretrial Order includes among the "uncontested facts" statements concerning the 2002 accident and the injuries Plaintiff sustained in that accident.  Defendants argue that Dr. Fremed's report "clearly sets forth the basis for his review of the records regarding that prior accident".  *See* Def.'s Opp'n Br., dkt. entry no. 55-1 at 3.

Having reviewed Dr. Fremed's report, the Court is satisfied that Dr. Fremed's references to the 2002 accident – including where it occurred – are not inappropriate and are adequately detailed and explained.  Accordingly, Plaintiff's motion to preclude or limit this aspect of Dr. Fremed's testimony [dkt. entry no. 41] is **DENIED**.

During the oral argument of Plaintiff's motion, following a discussion of Dr. Fremed's reference to the report of Dr. Pendino, Plaintiff's objection was **WITHDRAWN**.

With respect to the balance of Plaintiff's motion, Defendants note that all of the physicians whose prior reports are referenced by Dr. Fremed "have been identified [in the proposed Final Pretrial Order] as experts to be called at trial to testify to their opinions and conclusions regarding Plaintiff's alleged injuries". *Id*. at 4.  In sum, Defendants argue that Plaintiff's attempt to bar Dr. Fremed's testimony with respect to the reports of other physicians is contrary to the Federal Rules of Evidence.  Rather, Dr. Fremed has set forth in his report "all documents and opinions relied upon in formulating his ultimate conclusions and opinions". *Id*.

Again, having reviewed Dr. Fremed's report and considered the particular references to which Plaintiff objects, the Court is satisfied that they are not inappropriate and are consistent with FED. R. EVID. 703.  Accordingly, Plaintiff's motion to preclude or limit this aspect of Dr. Fremed's testimony [dkt. entry no. 41] is **DENIED**.

>  s/ *Douglas E. Arpert*
>  **DOUGLAS E. ARPERT**
>  **UNITED STATES MAGISTRATE JUDGE**

**DATED: March 29, 2012.**